UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

Present: The Honorable  **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Rasheed McWilliams        Guy Ruttenberg

          Bassil Madanat

**Proceedings:** DEFENDANTS J2 CLOUD SERVICES, LLC AND ADVANCED MESSAGING TECHNOLOGIES' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (Dkt. 28, filed October 31, 2016)

## I.  INTRODUCTION

On August 3, 2016, plaintiff Gregory C. James filed the instant action against defendants j2 Cloud Services, Inc. and Advanced Messaging Technologies, Inc. ("AMT"). Dkt. 1. On September 27, 2016, plaintiff filed his first amended complaint ("FAC"), adding j2 Cloud Services, LLC ("j2") as a defendant. Dkt. 15. Plaintiff asserts five claims against defendants: (1) correction of inventorship pursuant to 35 U.S.C. § 256; (2) unjust enrichment; (3) common law conversion; (4) common law misappropriation and unfair competition;[1] and (5) unfair competition under California Business and Professions Code §§ 17200 et seq. The gravamen of plaintiff's complaint is that j2 Cloud Services, Inc. and j2 Cloud Services, LLC (collectively, "JFAX") wrongfully patented inventions that plaintiff created, without crediting plaintiff as the inventor.

---

[1] Defendants assert, and plaintiff does not dispute, that on October 10, 2016, plaintiff's counsel acknowledged that plaintiff's fourth claim should read "Common Law Misappropriation" (not "Common Law Misappropriation and Unfair Competition"). Dkt. 28-1 at 13 n.4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

On October 31, 2016, j2 and AMT ("defendants") filed the instant motion to dismiss plaintiff's FAC or, in the alternative, for summary judgment on all claims.[2] Dkt. 1 ("Motion"). Plaintiff filed his opposition on November 21, 2016, dkt. 34 ("Opp'n"), and defendants filed their reply on December 5, 2016, dkt. 25 ("Reply").

## II.   BACKGROUND

Plaintiff alleges that, on or about November 1995, while residing and working in Australia, plaintiff was introduced to JFAX, which needed someone to develop, design, and implement software solutions that would provide fax-to-email, email-to-fax, and voicemail-to-email functionalities. FAC ¶¶ 9–11. Plaintiff and JFAX chairman and CEO, Jack Riely agreed that plaintiff, as a consultant to JFAX, would develop such software. Id. ¶ 11. Plaintiff alleges that "[n]obody at JFAX provided input" about how plaintiff should create the software systems that JFAX wanted. Id. ¶ 12. Nonetheless, plaintiff also avers that JFAX provided him with "instructions" that JFAX needed a system that could receive fax and voicemail transmissions over a telephone line and convert and forward the received transmissions to a recipient's email address. Id.

Plaintiff alleges that he wrote a software program that provided fax-to-email functionality ("Inbound Fax System") in November and December 1995. Id. at 13. Plaintiff traveled to New York in January of 1996 to install the Inbound Fax System and to connect the communications networks. Id. ¶ 15.

On February 11, 1996, plaintiff and Rieley executed a Software Development Agreement. Id. ¶ 16. Plaintiff attaches this agreement to his complaint as Exhibit A. See dkt. 15-1 ("SDA"). Under the terms of the SDA, plaintiff received shares of JFAX Communications, Inc. to develop the fax-to-email, email-to-fax, and voicemail-to-email functionalities. See SDA § 5. While plaintiff alleges that he completed work on the fax-to-email software prior to the execution of the SDA, see FAC ¶ 13–16, the SDA makes clear that plaintiff developed the fax-to-email product as an "independent contractor" for JFAX and in consideration for shares of JFAX. See SDA at 1, § 5. Furthermore, the SDA expressly contemplates that plaintiff completed his work on the fax-to-email solution *before* the February 11, 1996 execution of the agreement, which states: "'Fax-to-Email' should be completed, delivered to JFAX and available for full commercial use no

---

[2] Defendants state that j2 and AMT are JFAX's successors-in-interest. See dkt. 28-1 at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

later than January 31, 1996." SDA § 2.1.1.1. The SDA therefore suggests, as set forth in greater detail below, that plaintiff was "hired to invent" the Inbound Fax System.

The SDA also includes an arbitration provision, which provides: "Any dispute arising out of or relating to this Agreement shall be settled by arbitration pursuant to the commercial rules of the American Arbitration Association, San Francisco, California, U.S.A." Id. § 11.

Between January and July 1996, while in New York, plaintiff created software to enable email-to-fax functionalities ("Outbound System"). FAC ¶ 25. Plaintiff alleges that the only instruction he received from anyone at JFAX was that they needed a system for converting and sending an email message to a recipient's fax machine over a telephone network. Id.

On or around April 1996, while in New York, plaintiff created software to enable voicemail to-email functionalities ("Voicemail System"). Id. ¶ 30. Plaintiff alleges that the only instruction he received from JFAX was that they needed a system for converting and sending a voicemail message to a recipient's email address. Id.

On August 30, 1996, plaintiff assigned all copyrights to the software for the Inbound Fax System, Outbound System, and Voicemail System to JFAX. Id. ¶ 35; see also id. Ex A at 6–8 ("Copyright Assignments"). Plaintiff alleges that he did not assign any patent ownership or inventorship rights to JFAX or any other entities for the inventions embodies in those three systems. FAC ¶ 35.

On September 23, 1996, a New York Times article was published stating that JFAX was born "[a]fter two years of intensive work by an Australian telecommunications software development team." Id. ¶ 37 & Ex. B.

On April 1, 1997, JFAX filed for a patent application entitled "Method and Apparatus for Transmission and Retrieval of Facsimile and Audio Messages over a Circuit or Packet Switched Network," naming Rieley and Jaye Muller, JFAX's president, as the only two inventors. FAC ¶ 38. The application issued as U.S. Patent No. 6,208,638 (the "'638 Patent") on March 27, 2001. Id. & Ex. C.

In November 2013, plaintiff became aware of the patent application because he was contacted by attorneys representing a defendant in a patent infringement litigation involving the '638 Patent. FAC ¶ 39. Until that time, plaintiff contends that he had no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

knowledge that JFAX had "fraudulently concealed that it had omitted him from being the named inventor of the '638 patent." Id. Plaintiff also alleges that he had no reason to believe JFAX would seek patent protection of the systems that plaintiff developed because the parties never addressed how any resulting patent rights would be handled. Id. ¶ 40.

Plaintiff alleges that j2 has falsely represented and warranted that it owns the exclusive rights to the '638 Patent. Id. ¶ 42–43. Plaintiff claims the sole inventorship and ownership of the '638 Patent, the claims of which were conceived solely by plaintiff. Id. ¶ 46. Therefore, pursuant to 35 U.S.C. § 256, he seeks "to be named properly as the sole inventor and owner of the '638 patent." Id. ¶ 49. Plaintiff's state law claims derive from plaintiff's assertion that he is the sole inventor of the '638 patent and that defendants improperly left his name off of the patent application. Plaintiff seeks, inter alia, "all of j2's ill-gotten gains[,]" "punitive damages against j2 . . . in an amount sufficient to punish and make an example of them[,]" and "the disgorgement of all profits and royalties gained by j2 from the use and enforcement of plaintiff's inventions." Id. ¶¶ 55, 67, 76, 81.

### III. LEGAL STANDARDS

Constitutional "standing is an aspect of subject matter jurisdiction and . . . no matter how important the issue, a court lacking jurisdiction is powerless to reach the merits under Article III of the Constitution." Fleck & Associates, Inc. v. Phoenix, 471 F.3d 1100, 1106 n.4 (9th Cir. 2006) (citing Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 110 (2001)); see also Hollingsworth v. Perry, 133 S. Ct. 2652, 2659 (2013) ("Because we find that petitioners do not have standing, we have no authority to decide this case on the merits, and neither did the Ninth Circuit."). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Whether the plaintiff has Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Id. A plaintiff must demonstrate three elements that constitute the "irreducible minimum" of Article III standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'  JS-6** |
|---|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

>  be a causal connection between the injury and the conduct complained of—
> the injury has to be fairly ... trace[able] to the challenged action of the
> defendant, and not ... th[e] result [of] the independent action of some third
> party not before the court. Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted).

A motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). Such a motion may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). That is, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Thornhill Publishing co. v. General Tel. & Electronics, 594 F.2d 730, 733 (9th Cir. 1979).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, (3d ed.). If jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id. When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. See Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

## IV. DISCUSSION

Defendants first argue that this Court lacks subject matter jurisdiction over this case because plaintiff fails to allege an injury in fact, and therefore he lacks standing to bring his claim for correction of inventorship. Motion at 6. Specifically, defendants assert that plaintiff has no ownership rights in the '638 patent and alleges no other injury. Id. Therefore, defendants argue that a party without ownership rights in a patent lacks the financial interest required to justify standing for a claim under 35 U.S.C. § 256. Id. Even if plaintiff were an inventor—which defendants contest—defendants assert that plaintiff agreed, under the SDA, to transfer all ownership rights to the inventions at issue to JFAX. Id. In support of this argument, defendants point to the language of the SDA, which states: "JFAX shall become the sole owner of all code and compiled software solutions as described in this Agreement as soon as it is developed." Id.; see SDA § 3. Defendants also point to the SDA's preamble, which states that plaintiff "will develop software solutions for the exclusive use of the JFAX[.]" Reply at 3; SDA at 1. Furthermore, plaintiff has never sought a patent himself, nor has he paid the fees associated with filing the patent application, maintaining the patent, or defending the patent. Motion at 7–8. As a result, defendants contend that plaintiff has no basis for alleging injury based on the filing of the '638 patent. Id. at 7.

Plaintiff argues that defendants may not rely on Section 3 of the SDA as a basis for plaintiff's lack of ownership because the SDA was executed *after* plaintiff had developed the "patented invention."[3] Opp'n at 4. Even if the SDA applied retroactively, plaintiff asserts that the SDA did not address "patents, patent rights and inventions." Id. Plaintiff argues that, in the SDA, he only agreed to assign his copyrights. Id. Section 3 of the SDA reads in full: "JFAX shall become the sole owner of all code and compiled software solutions as described in this Agreement as soon as it is developed and GSP shall assign to JFAX all copyright interest in such code and compiled software." See SDA § 3; see also Copyright Assignments. Plaintiff argues that he could not have assigned the patent rights to defendants because "there is simply no written instrument that clearly conveys the patent rights created by James to JFAX." Id. at 5.

---

[3] The "patented invention" appears to be the Inbound Fax System, i.e., the fax-to-email software, which he developed before signing the SDA on February 11, 1996. See FAC ¶¶ 13–16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

To have standing to pursue an inventorship claim under 35 U.S.C. § 256, plaintiff must have an ownership or financial interest in the patent. See Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC, No. 11-cv-1463-DOC, 2013 WL 1182992, at *3 (C.D. Cal. Mar. 20, 2013) ("If a plaintiff lacks an ownership interest in a patent, and that plaintiff will not receive any other financial or personal rewards from a declaration of inventorship, that plaintiff does not have standing to sue under Section 256."); Larson v. Correct Craft, Inc., 569 F.3d 1319, 1327 (Fed. Cir. 2009) ("Because Larson lacks an ownership interest, and because being declared the sole inventor will not generate any other direct financial rewards . . . , Larson has no constitutional standing to sue for correction of inventorship in federal court.").

Although plaintiff argues that the SDA does not apply to the Inbound Fax System because the product was created before the SDA was executed, the plain terms of the agreement state that the SDA applies to the fax-to-email product. See SDA § 2; Ott v. Home Sav. & Loan Ass'n, 265 F.2d 643, 648 (9th Cir. 1958) ("[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom." (quotation marks omitted)); Charles Allen Wright et al., 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed.) ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit."). Even accepting that plaintiff created the inventions covered by the '638 patent, the SDA and the operative complaint make clear that plaintiff did so on behalf of JFAX and in exchange for shares of JFAX. See SDA § 5 (addressing plaintiff's compensation); FAC ¶ 11 ("Rieley on behalf of JFAX and James agreed that James, as a consultant to JFAX, would create and develop original software solutions and systems that would enable JFAX to offer Fax-to-Email, Email-to-Fax, and Voicemail-to-Email services to customers.").

Therefore, pursuant to the "hired-to-invent" doctrine, plaintiff's creation does not, on its own, generate an ownership interest in the '638 patent. Under the hired-to-invent doctrine, an independent contractor engaged to "devote his time to the development of a process and machinery" to solve a particular problem for compensation has no legal right to a patent on the inventions he develops in that employment absent a contract to the contrary. See Standard Parts Co. v. Peck, 264 U.S. 52, 59–60 (1924); see also Solomons v. United States, 137 U.S. 342, 346 (1890) ("If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | | 'O'   JS-6 |
|---|---|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | | Date | December 19, 2016 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | | |

successfully accomplishing the work for which he was employed, plead title thereto as against his employer.  That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer.").  Apart from his creation of the patented invention, the only basis for plaintiff's claim that he has a right to receive inventorship and ownership credit is the September 23, 1996 New York Times article, which stated: "After two years of intensive work by an Australian telecommunications software development team, JFAX was born."  See FAC Ex. B at 3.  The Court notes that this assertion was not a quotation of any JFAX employee or officer, even though the article heavily quoted Rieley and Muller.  The Court further notes that the article also states that "Muller and his record producer, Jack Rieley, dreamed up the JFAX service" and that "Muller came up with a plan for an Email based service."  Id. at 2–3.  In addition, plaintiff does not claim to have a copyright interest or any right to receive royalties.  See Larson, 569 F.3d at 1326–27 (because plaintiff "stands to reap no benefit from a preexisting licensing or royalties arrangement . . . Larson has no financial interest in the patents sufficient for him to have standing to pursue a § 256 claim.").

At oral argument, plaintiff's counsel argued that the hired-to-invent doctrine does not apply to independent contractors absent an express transfer of the invention ownership to the employer, which plaintiff contends did not occur here.  See Bldg. Innovation Indus., L.L.C. v. Onken, 473 F. Supp. 2d 978, 984 (D. Ariz. 2007) ("Rather than considering all the circumstances in finding contract terms implied in fact, the hired-to-invent doctrine employs a bright-line rule that a contract term transferring invention ownership to an employer may not be inferred when the inventor is an independent contractor.  Such a contract term may be implied when the inventor is a traditional employee."); Allegheny Steel & Brass Corp. v. Elting, 141 F.2d 148, 149 (7th Cir. 1944) ("Raichel was not an employee of Elting, but he was an independent contractor in the art of designing.  Elting called on Raichel, presented him with a catalog of several different designs, and merely asked him to prepare a design for Elting's use, but Elting gave him no idea or suggestion as to what form of design he should prepare.  Elting paid him $25 for making the design, with others not here in controversy.  Under these circumstances we think the District Court was right in holding that Raichel was the real inventor.").  However, the rules enunciated in Building Innovation and Allegheny Steel appear to be in conflict with the Supreme Court's holding in Standard Parts Co. v. Peck.  In Standard Parts, the Supreme Court, in articulating the "hired to invent" rule, did so in a case where the inventor was an independent contractor.  See 264 U.S. at 59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'    JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | December 19, 2016 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

Further, in the instant case, plaintiff expressly agreed to "develop software solutions for the *exclusive use* of JFAX Communications[.]" SDA at 1 (emphasis added). Therefore, the SDA necessarily precludes plaintiff from retaining ownership of the patent rights, which would, for example, enable plaintiff to license the rights in contravention of JFAX's exclusive use.

Finally, at oral argument, plaintiff's counsel also suggested that the hired-to-invent doctrine is an equitable doctrine that does *not* confer legal title to patents to the employer, in this case JFAX. However, on review of the case law, it appears that plaintiff misconstrues the nature of this equitable doctrine. See Gellman v. Telular Corp., 449 F. App'x 941, 945 (Fed. Cir. 2011) (the hired-to-invent "doctrine is expressly equitable, and creates only an obligation for the employee to assign to his employer"); Melin v. United States, 478 F.2d 1210, 1213 (Ct. Cl. 1973) ("The traditional rule is that where a person is employed by another to make an invention and he succeeds in accomplishing the assigned task during the period of employment, the employer is the equitable owner of the invention, and the employee is obligated to assign to the employer any patent that may be obtained on the invention, since the employee has only produced that which he was employed to invent[.]"). These cases demonstrate that plaintiff does not have equitable title to the patent.

The Court therefore finds that plaintiff fails to allege facts sufficient to show that he has an ownership or financial interest in the '638 patent. Accordingly, the Court concludes that plaintiff lacks standing to assert his inventorship claim under 35 U.S.C. § 256. "[I]f the jurisdiction-conferring patent claim is dismissed for lack of standing, the district court cannot exercise supplemental jurisdiction over surviving state-law claims because there was never an Article III case or controversy." Larson, 569 F.3d at 1325–26. The Court therefore dismisses plaintiff's claims pursuant to Rule 12(b)(1).

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion to dismiss plaintiff's claims for lack of subject matter jurisdiction.

IT IS SO ORDERED.

|  | 00 : 33 |
|---|---|
| Initials of Preparer | CMJ |