UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL        'O'    JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS J2 CLOUD SERVICES, LLC
AND ADVANCED MESSAGING TECHNOLOGIES' MOTION
FOR SUMMARY JUDGMENT (Dkt. 107, filed April 10, 2019)

## I.    INTRODUCTION

On August 3, 2016, plaintiff Gregory C. James filed the instant action against
defendants j2 Cloud Services, Inc. and Advanced Messaging Technologies, Inc.  Dkt. 1.
The gravamen of this action is that JFAX Communications, Inc. ("JFAX"), defendants'
predecessor-in-interest, patented inventions that plaintiff created without crediting him as
the sole inventor.

On September 27, 2016, plaintiff filed his first amended complaint ("FAC"),
adding j2 Cloud Services, LLC as a defendant.  Dkt. 15.  On October 31, 2016,
defendants filed a motion to dismiss all plaintiff's claims under Federal Rules of Civil
Procedure 12(b)(1) and 12(b)(6).  Dkt. 28-1.  On December 19, 2016, the Court granted
defendants' motion to dismiss for lack of standing.  Dkt. 37.  On appeal, the Federal
Circuit reversed and remanded as to the dismissal for lack of standing.  Dkt. 48.  After
remand, plaintiff filed a second amended complaint.  Dkt. 56.   The second amended
complaint removed j2 Cloud Services, Inc. as a defendant.  Id.

Plaintiff asserted four claims against defendants in his second amended complaint:
(1) correction of inventorship pursuant to 35 U.S.C. § 256; (2) unjust enrichment; (3)
common law conversion; and (4) unfair competition under California Business and
Professions Code §§ 17200 et seq. ("UCL").  On October 22, 2018, defendants filed a
motion to dismiss plaintiff's state law claims.  Dkt. 59.  The Court granted the motion to
dismiss with leave to amend on November 19, 2018.  Dkt. 64.  On November 26, 2018,
plaintiff filed a third amended complaint adding a party and new claims, dkt. 65, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

the Court subsequently struck because the plaintiff did not have leave to add new parties or claims, dkt. 71.

On November 30, 2018, plaintiff filed a corrected third amended complaint which omitted the new defendant and claims, dkt. 72, and filed a motion for leave to file a fourth amended complaint on December 5, 2018, dkt. 73. On December 14, 2018, while plaintiff's motion for leave to amend was pending, defendants filed a motion to dismiss plaintiff's third amended complaint. Dkt. 79. On January 14, 2019, the Court granted plaintiff's motion for leave to amend and denied defendant's motion to dismiss as moot. Dkt. 84. On January 18, 2019, plaintiff filed a fourth amended complaint, which added a claim for fraudulent concealment and added j2 Global, Inc. as a defendant. Dkt. 85 ("FAC"). On January 25, 2019, plaintiff filed a notice dismissing defendant j2 Global, Inc. pursuant to Federal Rule of Civil Procedure 41(a)(1). Dkt. 89. Defendants filed a motion to dismiss the state law claims in the fourth amended complaint on January 28, 2019. Dkt. 90. The Court dismissed plaintiff's UCL claim with prejudice and denied defendants' motion to dismiss plaintiff's claims for fraudulent concealment, unjust enrichment, and conversion. Dkt. 102.

On April 10, 2019, defendants filed the instant motion for summary judgment on all plaintiff's claims, dkt. 107 ("Mot."), and a separate statement of undisputed facts and conclusions of law, dkt. 107-14 ("DSUF"). Plaintiff filed an opposition on April 23, 2019, dkt. 110 ("Opp'n"), and a separate statement of genuine disputes, dkt. 110-1 ("PSGD"). Defendants filed a reply on May 6, 2019. Dkt. 111 ("Reply").

The Court held a hearing on May 20, 2019. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.     BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background. Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A.     Plaintiff's Introduction to JFAX

In the mid-1990's, two entrepreneurs named John Rieley and Jens Muller conceived the idea for a system that would allow for faxes and voicemails to be sent over telephone lines and converted to email. DSUF No. 2. In or around November 1995, plaintiff, who was living in Australia at the time, was introduced to Rieley and Muller

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

over the telephone "as someone who could create systems and software solutions for services related to telephone systems for commercial deployment." DSUF No. 7; Dkt. 110-2, Declaration of Gregory James ("James Decl.") ¶ 2. According to plaintiff, Rieley and Muller told him that:

> [T]hey wanted a commercial system that would serve several thousand customers by allowing them to receive their faxes over email [] and their voicemail messages over email []. They wanted to provide services wherein clients could have access to their faxes and voicemail messages anywhere in the world where there is internet access. Thus, an email address should be the final destination of a fax or voicemail that is addressed to a telephone number on the public switch telephone network [].

Id. ¶ 4. Before engaging plaintiff as a contractor, Rieley and Muller required plaintiff to first develop a prototype of the "Fax-to-Email" and "Voicemail-to-Email" systems that complied with their guidelines. PSGD No. 202. Rieley and Muller subsequently founded JFAX in late 1995 to commercialize these systems, DSUF No. 5, and by December 1995, plaintiff had successfully developed a prototype of the Fax-to-Email system and provided a demonstration of the prototype to Rieley and Muller, PSGD No. 214. The Voicemail-to-Email prototype was also mostly completed by this time. PSDG No. 211.

## B.    The Terms of the Software Development Agreement

In late January 1996, plaintiff traveled to New York to replicate and install the prototype Fax-to-Email and Voicemail-to-Email systems. PSDG No. 223. In February 1996, plaintiff entered into a Software Development Agreement ("SDA") with JFAX. Dkt. 85-1. Although plaintiff signed the SDA on behalf of a partnership called "GSP Software," plaintiff concedes that the other individuals he solicited to help him with JFAX's project never participated and that he was the only member of GSP Software who performed the work under the SDA. PSGD No. 225; James Decl. ¶¶ 10, 11, 19; Dkts. 107-4 and 110-3, Deposition of Gregory James ("James Depo.") at 73:7–21.

Under the terms of the SDA, plaintiff agreed "to develop original software solutions, write original software routines, carry out testing and otherwise provide technological solutions for the JFAX system, and be responsible for the creation, execution and delivery to JFAX of a series of aspects of those solutions." SDA § 2. The "aspects" of the "JFAX system" to be developed by plaintiff included a "Fax-to-Email system" and a "Voicemail-to-Email system." Id. § 2.1, 2.3. The SDA specifically required plaintiff to provide a "commercially viable system" for enabling faxes and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|----------|-------------------------|------|--------------|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

voicemail messages "to be received via advanced telecommunications equipment located anywhere in the world and then transmitted over the Internet to electronic mail addresses of JFAX customers." Id. §§ 2.1, 2.3. The SDA also stated that "JFAX may provide guidelines and/or specifications for the system . . ." Id. § 2.1.1, 2.2.1, 2.3.1.

The SDA further provided that JFAX would "become the sole owner of all code and compiled software solutions as described in [the SDA] as soon as it is developed[.]" Id. § 3. And under the SDA, "[a]ll code and compiled software solutions" were to be "treated as the trade secrets of JFAX," and JFAX was explicitly permitted to assign, sell, or otherwise commercially distribute any code or compiled software developed pursuant to the SDA. Id. §§ 5.5, 6. In return for his completed work, James was to be compensated by shares of JFAX stock. Id. §§ 5.1–5.3.

### C.     JFAX's Patent on the Voicemail-to-Email and Fax-to-Email Systems

James completed his work for JFAX around August or September 1996 and returned to Australia. DSUF No. 28. On April 1, 1997, JFAX filed for a patent application entitled "Method and Apparatus for Transmission and Retrieval of Facsimile and Audio Messages Over a Circuit or Packet Switched Network," which issued as U.S. Patent No. 6,208,638 ("'638 Patent"). DSUF No. 30.

JFAX became a publicly traded company through an initial public offering ("IPO") in 1999. DSUF No. 40. As a shareholder, plaintiff received various disclosure documents as part of JFAX's IPO. Id. No. 41. On June 21, 1999, James signed and notarized an "Underwriting Agreement," acknowledging that he received and reviewed JFAX's "registration statement on Form S-1." Id. No. 42, Dkt. 111-6, D. Ex. 19 ("Underwriting Agreement") at 4, 9–10. The Form S-1 registration statement describes JFAX's Fax-to-Email and Voicemail-to-Email systems and states that JFAX has pending patent applications for "proprietary aspects of the major components of [JFAX's] technology . . ." Dkt. 107-10, D. Ex. 8 ("Registration Statement") at 31, 33.

The '638 Patent issued on March 27, 2001. DSUF No. 30. The '638 Patent includes claims relating to the systems and methods of JFAX's Fax-to-Email and Voicemail-to-Email services and names Rieley and Muller as co-inventors. Id. Nos. 31,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

32.  On May 17, 2001, j2 Cloud[1] issued a press release announcing the '638 Patent. DSUF No. 33; Dkt. 107-5, D. Ex. 3 ("Press Release").[2]  The press release announced that "[the '638 Patent] describes a method and apparatus for accepting an incoming message over a circuit switched network and transmitting it over a packet switched network" and that Rieley and Muller were the named inventors on the patent. Id. No. 35.

Plaintiff contends that it was not until November 2013 when he first learned of JFAX's patent application on the Fax-to-Email and Voicemail-to-Email systems he developed.  FAC ¶ 47; James Decl. ¶ 29.  Plaintiff alleges that he is the sole inventor of the subject matter in all the claims of the '638 Patent and that j2 Cloud has falsely represented and warranted that it owns exclusive rights to the '638 Patent.  FAC ¶¶ 51, 163.

## III.  LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[1]    JFAX underwent various reorganizations and was ultimately converted into a limited liability company known as "j2 Cloud Services, LLC," which is part of a larger conglomerate.  DSUF No. 71.

[2]    Without providing any argument, plaintiff objects to the press release on the grounds of "hearsay" and "authentication."  DSUF No. 34.  The Court overrules plaintiff's hearsay objection because the press release is not admitted for the truth of the matter asserted but rather to show that plaintiff had notice that JFAX obtained a patent on the systems that plaintiff alleges to have invented.  See Kunz v. Utah Power & Light Co., 913 F.2d 599, 605 (9th Cir. 1990) (noting that press releases were properly admitted at trial because they "were not offered to prove their truth . . . but rather to show that the [plaintiffs] had notice . . ."). And in light of a declaration submitted by defendants authenticating the press release and its date, see dkt. 111–7, the Court hereby overrules plaintiff's objection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

Defendants move for summary judgment primarily on the grounds that plaintiff has failed to substantiate his claims for sole inventorship on the '638 Patent. Mot. at 1. Defendants also argue that that all of plaintiffs' claims are time-barred by either the doctrine of laches or the applicable statute of limitations. Id. at 2.

### A.     Plaintiff's Claim for Sole Inventorship

Plaintiff seeks to be named as the sole inventor of the '638 Patent under 35 U.S.C. § 256. In a section 256 proceeding, "[t]he inventors as named in an issued patent are presumed to be correct." Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997). "The burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence." Id. (quoting Garrett Corp. v. United States, 422 F.2d 874, 880 (Ct. Cl. 1970)). This is so because of "the temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what their state of mind may have been years earlier[.]" Id. (internal quotations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|----------|-------------------------|------|--------------|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

and citations omitted). "An alleged co-inventor's testimony, or the testimony of the inventor himself, standing alone, cannot provide clear and convincing evidence of conception." University of Pittsburg of Commonwealth Sys. of Higher Educ. v. Hedrick, No. CV04-9014 CBM AJWX, 2008 WL 8627085, at *9 (C.D. Cal. June 9, 2008) (citing Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1377 (Fed. Cir. 2004)). "Independent corroboration may consist of testimony of a witness . . . to the actual reduction to practice or it may consist of evidence of surrounding facts and circumstances independent of information received from the inventor." Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1171 (Fed. Cir. 2006). "Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350–51 (Fed. Cir. 2001).

"Conception is the touchstone of inventorship." Burroughs Wellcome Co. v. Barr Labs, Inc., 40 F.3d 1223, 1227 (Fed. Cir. 1994). Conception is the "formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986). "An inventor may conceive of an invention without establishing whether the invention would work for its intended purpose." University of Pittsburg, 2008 WL 8627085, at *8 (citing Burroughs, 40 F.3d at 1231). "A suggestion to 'evaluate' a 'possibility' can be enough to demonstrat[e] conception, and no rule 'excludes 'research proposals' as evidence of conception'" Id. (quoting In re Jolley, 308 F.3d 1317, 1321, 1323 (Fed. Cir. 2002)). "The conceived invention must include every feature of the subject matter claimed in the patent." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998).

As the party claiming to be the sole inventor of the '638 Patent, plaintiff must demonstrate that he is the sole inventor of each of the claims of that patent. See AutoAlert, Inc. v. DealerSocket, Inc., No. SA CV 13-00657 SJO (JPRx), 2014 WL 11512624, at *8 (C.D. Cal. 2014). On the other hand, anyone who contributes to the conception of even one claim in a patent is properly named as a co-inventor on the patent. See Ethicon, 135 F.3d at 1460. Plaintiff thus bears the burden of showing that he "conceived of every claim of the patent and that any contribution by defendants to the conception of each and every claim was insignificant." University of Pittsburg, 2008 WL 8627085, at *7.

The '638 Patent in this case includes 40 claims relating to JFAX's Fax-to-Email and Voicemail-to-Email systems. DSUF No. 30. Here, plaintiff alleges that he alone

| CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

conceived of the subject matter of the '638 Patent because Muller and Rieley merely expressed a "bare desire" for the systems that that plaintiff ultimately developed. Opp'n at 9. Plaintiff bases his claim of sole inventorship on the following evidence: (1) Muller's testimony in a deposition that he "only told [plaintiff] what the purpose [of the system] was supposed to be in the end. I didn't say how to do it," Dkt. 110-3, 2014 Deposition of Jens Muller ("Muller Depo.") at 76:10–78:7, PSGD No. 196; (2) Muller's testimony that "Greg James was first being consulted about this kind of system, if it's – if it would be possible, and he said he could create such a code for that system . . . ," Muller Depo. 75:1–7, PSGD No. 201; (3) Muller's testimony that he "did not know how to write the code [for the systems]," Muller Depo. 142:9–20, PSGD No. 249; (4) Muller's testimony that plaintiff worked on a prototype in Australia that "was doing what it was meant to do, it was supposed to receive a fax at a fax number, convert that to a graphic file, and then send it to an e-mail address and arrive at – an e-mail account with a graphics file attached," Muller Depo. at 76:10–23, PSGD No. 196; (5) plaintiff's assertion that he replicated the prototype after he signed the SDA with JFAX, PSGD No. 224; (6) j2 Cloud's press release about the '638 Patent which stated that the claimed technology "allows both faxes and voice messages to be received without the end user needing either a fax machine or a voice-mail system," DSUF No. 36; (7) the terms of the SDA which stated that plaintiff was "responsible for the creation" of the system and software solutions for the Fax-to-Email and Voicemail-to-Email systems, PSGD No. 255; (8) the fact that plaintiff was paid by JFAX after completing his work under the SDA, PSDG No. 255; and (9) the fact that he assigned to JFAX all copyright interests in the code and compiled software that he created under the SDA, PSGD No. 259.

Assuming that the aforementioned facts are true and drawing all inferences from those facts in the light most favorable to plaintiff, the Court finds that plaintiff, at most, has established that he developed a prototype of a system that could convert a voicemail or fax to an email. The record, however, is devoid of any contemporaneous evidence describing plaintiff's prototype with the level of detail required to compare that prototype to the claims in the '638 Patent. There is *nothing* in the record connecting plaintiff's prototype to the claims of the '638 Patent, much less clear and convincing evidence that plaintiff alone conceived of each element of the 40 claims of that patent. The Court thus finds that plaintiff has failed to create a triable issue with respect to sole inventorship of the '638 Patent.

Plaintiff also admitted in his deposition testimony that Muller and Rieley contributed to at least some of the claims of the '638 Patent. DSUF No. 169. During his deposition, plaintiff was asked to highlight any of the claims of the '638 Patent that he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'    JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|----------|--------------------------|------|--------------|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

believed "reflect[ed] any contribution from either Mr. Muller or Mr. Rieley." James Depo. at 413:1–4. As part of this exercise, plaintiff highlighted the following claims (the italicized font represents the highlighted portions):

- 12. The system of claim 1, where the message processing resource further comprises a processor to: *determine if the audio message contains a facsimile message or a voice message; and, digitize the audio message if the audio message contains the voice message and receive the facsimile message if the audio message contains the facsimile message.*

- 22. The method of claim 13, further including: *determining if the audio message contains a facsimile message or a voice message; and, digitizing the audio message if the audio message contains the voice message and receiving the facsimile message if the audio message contains the facsimile message.*

- 23. A method comprising . . . sending the digital representation to [] at least one destination address, wherein the particular inbound address is uniquely assigned to the user account, the at least one destination address comprised at least one email address and the system management ensures *that the digital representation is routed to [] at least one email address.*

- 26. A method comprising: . . . sending the digital representation to [] at least one destination address, wherein the particular inbound address is uniquely assigned to the user account *and [] at least one designation address comprises at least one email address.*

- 33. *The system of claim 32, where the audio message is a facsimile message and the digital representation of the audio message is a graphics file.*

- 37. The system of claim 35, where the message processing resource further comprises a processor to: *determine if the audio message contains a facsimile message or a voice message; and, digitize the audio message if the audio message contains the voice message and receive the facsimile message if the audio message contains the facsimile message.*

Dkt. 107-9, at 9, 17–19.

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

An individual is properly named as an inventor so long as the person "contributed to the invention defined by" a claim or "if [the person's] contribution found its way into the defined invention" in a claim. Ethicon, 135 F.3d at 1461–63. Plaintiff cannot be the sole inventor of each claim of the '638 Patent if Riley and Muller contributed to the aforementioned claims. In his opposition, plaintiff argues that the items highlighted by plaintiff were "nothing more than a description of the state of the art, whose sole basis for inclusion [in the patent] was [plaintiff] himself." Opp'n at 9. Plaintiff, however, provides no evidence demonstrating what was, in fact, the state of the art at the time. Moreover, this bare assertion is contradicted by the file history of the re-examination of the '638 Patent.[3]

In its "Reasons for Patentability," the U.S. Patent & Trademark Office Examiner emphasized the "detailed nature" of the independent claims of the '638 Patent, including the limitations directed to an incoming call signal containing an "audio message, which is

---

[3]     In response to defendants' motion for summary judgment, plaintiff submitted a declaration in which he contends that he only highlighted those portions of the claims because they were "implied from the generalized information from Rieley and Muller for a Fax-to-Email service and Voicemail-to-Email service." James Decl. ¶¶ 32–36. It appears that plaintiff is attempting to argue that Muller and Rieley did not conceive of those claims but rather, plaintiff conceived of them in an effort to comply with Muller and Rieley's request to develop the Voicemail-to-Email and Fax-to-Email systems. The Court is not persuaded by this interpretation of plaintiff's deposition testimony because, under plaintiff's reasoning, all of the claims of the '638 Patent should have been highlighted as "implied from" Muller and Rieley's request for plaintiff to develop the systems. The deposition testimony clearly states that plaintiff highlighted the portions of the '638 Patent that he believed "reflect[ed] a contribution from either Mr. Muller or Mr. Rieley[,]" James Depo. 413:5–9, and the Court sees no reason to allow plaintiff to contradict his deposition testimony for the purpose of determining whether there is a genuine issue of fact. See e.g., Kruse v. State of Hawai'i, 857 F. Supp. 741 (D. Haw. 1994) ("[T]he non-movant cannot defeat summary judgment simply by submitting a declaration which directly contradicts that party's prior declarations or testimony.") (citing Richardson v. Bonds, 860 F.2d 1427, 1433 (7th Cir. 1988)); Lamb v. Household Credit Services, 956 F. Supp. 1511, 1518 (N.D. Cal. 1997) ("A party normally will not be able to defeat summary judgment with an affidavit that directly contradicts that party's earlier affidavit or sworn testimony, unless the affidavit is accompanied by a credible explanation for the contradiction.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

converted into a digital representation," which is then "sent to a destination address [that] must contain at least one email address." DSUF No. 172. The Examiner also emphasized that the first incoming call signal includes a particular inbound address uniquely associated with a user account "and at least one destination address on a packet switched network." Id. No. 173. The Examiner found that the explicit language of these claims—portions of which were highlighted by plaintiff in his deposition as representing contributions from Muller and Rieley—"distinguishes over the prior art." Id. No. 174. Plaintiff's opposition does not address the Examiner's findings nor is there any evidence in the record to support plaintiff's argument that Muller and Rieley's contributions merely reflected the state of the art at the time. Plaintiff has thus failed to create a genuine dispute as to whether Muller and Rieley at least shared in the conception of some of the subject matter of the claimed invention, defeating plaintiff's claim for sole inventorship.

Accordingly, the Court finds that defendants are entitled to summary judgment on plaintiff's claim for sole inventorship of the '638 patent.

## B.      Whether Plaintiff's Inventorship Claim is Barred by the Doctrine of Laches

The Court also finds that plaintiff's inventorship claim is barred by the doctrine of laches. The equitable defense of laches may bar an inventorship claim. Serdaveric v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1358 (Fed. Cir. 2008). The two elements underlying the defense of laches are: "(a) the [plaintiff's] delay in bringing suit was unreasonable and inexcusable, and (b) the [defendant] suffered material prejudice attributable to the delay." A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (abrogated on other grounds by SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC, 137 S. Ct. 954 (2017)). The application of this defense is committed to the sound discretion of the district court. Serdaveric, 532 F.3d at 1358. "[A] delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches." Id. (quoting Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir. 1993)). Absent actual knowledge of the issuance of a patent, "the facts must support a duty of inquiry" as "the law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." Advanced Cardiovascular, 988 F.2d at 1162 (internal quotations and citation omitted). If the presumption of laches

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|----------|-------------------------|------|--------------|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

applies, unreasonable delay and prejudice are inferred and a defendant need not present affirmative evidence that it suffered any prejudice. <u>Serdaveric</u>, 532 F.3d at 1359.

If a defendant establishes a presumption of laches in a motion for summary judgment, the burden shifts to the plaintiff to "rebut the presumption of laches 'by offering evidence to show an excuse for the delay or that the delay was reasonable' or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" <u>Id.</u> at 1359–60 (quoting <u>Aukerman</u>, 960 F.2d at 1038). "If the [plaintiff] presents a sufficiency of evidence which, if believed, would preclude a directed finding in favor of the [defendant], the presumption evaporates and the accused . . . is left to its proof." <u>Aukerman</u>, 960 F.3d at 1037–38.

### i.   Whether Plaintiff Should Have Known of the Issuance of the '638 Patent in 2001

When applying the doctrine of laches, "the period of delay is measured from when the claimant had actual notice of the claim or would have reasonably been expected to inquire about the subject matter." <u>Advanced Cardiovascular</u>, 988 F.2d at 1162. Plaintiff contends that the discovery date of his inventorship claim was in November 2013, when he first learned of the '638 Patent, and that prior to that point, he "had no reason to believe that his inventions would be the subject of a public disclosure, and therefore had no reason to search the United States Patent and Trademark office from his home in Australia for JFAX disclosing his inventions." Opp'n at 19. Although plaintiff denies having any knowledge of the issuance of the '638 Patent until November 2013, defendants have presented evidence demonstrating that plaintiff should have known of the issuance of the '638 Patent in 2001 because: (1) he acknowledged receiving JFAX's Registration Statement in 1999, which indicated that JFAX was pursuing patents on major aspects of its technologies; (2) plaintiff himself admitted that he was "aware" JFAX would have patents on its technology before making an IPO; and (3) with reasonable diligence, plaintiff could have learned of his claims as early as March 27, 2001, when the '638 Patent issued, or when j2 Cloud issued a press release announcing the '638 Patent on May 17, 2001. Mot. at 18–19.

### a.   JFAX's Registration Statement

As part of JFAX's IPO, plaintiff acknowledged on June 21, 1997 that he had received and reviewed JFAX's Registration Statement. Underwriting Agreement at 4, 7. The Registration Statement referenced in the Underwriting Agreement was filed with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

Securities and Exchange Commission on April 16, 1999, and described the inbound services of JFAX's "Service Architecture and Information Systems" as follows:

> Inbound servers accept incoming fax and voice mail messages, on trunk lines from local telephone providers. . . . After a fax transmission or a voice message is received by the server, it is compressed into a standard form, and sent to the user's e-mail address via the Internet. . . .

Registration Statement at 31. Under the heading "Patents and Proprietary Rights," the Registration Statement provides that:

> We developed substantially all of our software internally. We have agreements with our programmers that provide for our ownership of all software and intellectual property. . . . We have multiple patents pending for proprietary aspects of major components of our technology.

Id. at 33.

According to defendants, plaintiff's notarized signature on the Underwriting Agreement demonstrates that plaintiff was on notice as of June 1999 that JFAX was pursuing patents based on technologies that plaintiff helped develop. Mot. at 18. Plaintiff also acknowledged in his deposition having received "disclosure documents" as part of the IPO. James Depo. at 319:15–17. Despite plaintiff's notarized signature on the Underwriting Agreement and his own deposition testimony, plaintiff asserts that JFAX did not provide him with a copy of the Registration Statement during the IPO process. James Decl. ¶ 23. This bare assertion is insufficient to create a genuine dispute of material fact as to whether the plaintiff received the Registration Statement because it is undisputed that plaintiff signed and notarized an agreement indicating that he had, in fact, received that statement and reviewed it to ensure its accuracy. See Aardwolf Industries, LLC v. Abaco Machines USA, Inc., No. CV 16-1968-JW(JEMx), 2017 WL 10350547, at *12 (C.D. Cal. Nov. 13, 2017) ("[S]elf-serving declarations do not raise genuine disputes, much less establish undisputed facts because the testimony is contradicted by evidence on record[.]"); Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., No. CV 55-2200 MMM (MCx), 2008 U.S. Dist. LEXIS 71761, *46–47 (C.D. Cal. Mar. 17, 2008) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); Dropbox, Inc. v. Thru Inc., No. 15-CV-01741-EMC, 2016 WL 6696042, at *3 (N.D. Cal. Nov. 15, 2016) ("When opposing parties tell two different stories, once of which is blatantly contradicted by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Although the Registration Statement did not explicitly state that JFAX was seeking a patent application on the Fax-to-Email and Voicemail-to-Email systems that plaintiff developed, it nonetheless stated that JFAX was seeking a patent application on "proprietary aspects of major components of our technology" and included a description of the "inbound services" that plaintiff helped develop. Registration Statement at 33, 31. Moreover, in the introductory paragraphs of the Registration Statement, JFAX explained that its "services enable the user's e-mail box to function as a single repository for all e-mail, fax, and voice mail and can permit convenient message retrieval through e-mail or by phone." Id. at 5. The Court thus finds that the content of the Registration Statement would have caused a reasonable person to make further inquiries about whether JFAX was, in fact, pursuing a patent on the technology that plaintiff alleges to have developed. "The Supreme Court has consistently imputed to parties who failed to examine readily available information the knowledge contained in it and the results of inquiries that the knowledge would have motivated a reasonable man to conduct." Wanlass v. General Elec. Co., 148 F.3d 1334, 1338–39 (Fed. Cir. 1998) (collecting cases). Plaintiff provides no evidence that would place this finding in genuine dispute, besides his own self-serving declaration denying that he ever received this Registration Statement.

### b.    Plaintiff's Deposition Testimony

But even setting aside the Registration Statement, plaintiff himself admitted during his deposition that he understood JFAX needed to have intellectual property in order "to get traction in the IPO market" and that he was "aware" that JFAX had patents all along. James Depo. at 319:24–320:19. Plaintiff also explained that he was mostly surprised to learn that "the patent was issued only a couple months after [he] left in '97 . . . not that j2 pursued patents." Id. at 320:8–11. Plaintiff also testified that he believed "[his] intellectual property gave the ability for JFAX to prosper, for their shares to become valuable, and without it, it's just a marketing company without my intellectual property." Id. at 62:2–7. Considering that plaintiff knew JFAX was looking to make an IPO in 1999, that he knew his intellectual property was the core of JFAX's business, and that he knew JFAX had patents all along, the Court finds that a reasonable person in his position would have made further inquiries about whether JFAX was pursuing a patent on the Fax-to-Email and Voicemail-to-Email systems he claims to have invented.

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|----------|-------------------------|------|--------------|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

Plaintiff offers no evidence that would create a genuine dispute as to whether plaintiff was put on inquiry notice that JFAX was pursuing a patent on the technology he developed. Rather, plaintiff asserts that although he "understood that start-ups may have patents or patent applications prior [to] undergoing an IPO . . . [he] did not expect that JFAX would file a patent application on the Fax-to-Email and Voicemail-to-Email [systems] [he] developed because [he] fully expected the software solution [he] developed and delivered to JFAX would be kept as a trade secret in perpetuity[.]" James Decl. ¶ 24. The SDA, however, explicitly allowed JFAX to commercially distribute the code and compiled software developed by plaintiff and imposed the confidentiality requirement on plaintiff alone, not JFAX. See SDA § 5.5 ("All code and compiled software solutions covered by this Agreement shall be treated as the trade secrets of JFAX. [Plaintiff] shall not disclose to any third party, anything about JFAX operations, equipment, systems, software, code, compiled code, management or business methods to any person or entity whatsoever, without the prior, express, written permission of JFAX."); SDA § 6 ("JFAX shall be permitted to assign, sell or otherwise commercially distribute any code or compiled software developed pursuant to this Agreement to any third party, as long as the transaction is made in good faith."). Moreover, the content of the Registration Statement should have disabused plaintiff of the notion that JFAX was not going to pursue any patents on the technology he developed, regardless of the terms of the SDA. The Court thus finds that plaintiff's belief that JFAX was obligated to keep the Voicemail-to-Email and Fax-to-Email systems a trade secret in "perpetuity" was an unreasonable belief and is insufficient to create a genuine dispute as to whether plaintiff was put on inquiry notice that JFAX was pursuing a patent on his technology.

### c.     The Discovery Date

When applying the doctrine of laches, the period of delay is measured from when the plaintiff knew or should have known that the patent had issued and that he was omitted as an inventor. See Advanced Cardiovascular, 988 F.2d at 1162. The period of delay cannot begin prior to the issuance of the patent. See Aukerman, 960 F.2d at 1032. Although constructive notice of the issuance of a patent "is not an appropriate substitute for the determination of reasonableness of excuse for delay," Advanced Cardiovascular, 988 F.2d at 1162, the Court finds that, based on the undisputed facts in this record, plaintiff had enough information to place upon him a duty of inquiry and thus a reasonable person in his position should have known that the '638 Patent issued in 2001, see id. ("[T]he reasonableness of the behavior of against whom laches is asserted depends on the facts of the particular case[.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'    JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

As the Court explained above, it is undisputed that: (1) plaintiff knew JFAX was pursuing patents on its technology as part of its IPO; (2) plaintiff believed the systems he developed were critical to JFAX's success; and (3) plaintiff acknowledged receiving JFAX's Registration Statement which explicitly stated JFAX was pursuing patents on major aspects of its technology. DSUF Nos. 57–58, 63, 42. There is no genuine dispute as to whether plaintiff was on notice that JFAX was pursuing patents that may have encompassed his technology and would have reasonably been expected to inquire further about whether JFAX was pursuing a patent on the systems that he developed. Moreover, there is no dispute that the '638 Patent issued on March 27, 2001 and was readily available to plaintiff. Indeed, plaintiff testified in his deposition that he regularly used Google to search the U.S. Patent Office website for patents as part of his job from 2002 to 2006. James Depo. at 33:11–34:9. Plaintiff thus had the means to access the content of the '638 Patent and learn that he had not been named as an inventor. DSUF No. 59; James Depo. at 316:17–24. Moreover, it is undisputed that j2 Cloud issued a press release on May 17, 2001, announcing the '638 Patent and describing the patented invention. DSUF Nos. 33–36. Plaintiff does not affirmatively deny having seen this press release. Furthermore, he is charged with knowledge of this press release because "the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." See Advanced Cardiovascular, 988 F.2d at 1162. Plaintiff could have visited j2 Cloud's website and found this press release. Indeed, plaintiff testified during his deposition that, after leaving JFAX, he would visit JFAX's website to "see what they're doing." DSUF No. 60; James Depo. at 318:8–11. The Court thus finds that the clock on plaintiff's inventorship claim began, at the latest, on May 17, 2001, when j2 Cloud issued a press release announcing the '638 Patent. By that point, plaintiff was on notice that JFAX was pursuing patents on major aspects of its technology and he had the means to access the content of the '638 Patent to learn that it covered the technology that he developed and omitted him as a named inventor. Since plaintiff did not file this action within six years of the date he should have learned that the '638 Patent issued, the presumption of laches applies.[4]

---

[4]     Plaintiff relies on Advanced Cardiovascular for the proposition that the laches period must be calculated from the date that the inventor *actually* learned of the patent. Opp'n at 18. However, in Advanced Cardiovascular, the Federal Circuit held that the "knew-or-should-have-known" standard is appropriate in actions to correct inventorship. 988 F.2d at 1162.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**      **JS-6**

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

### ii.     Reasonableness of Delay

A plaintiff may rebut a presumption of laches by "offering evidence to show an excuse for the delay or that the delay was reasonable." Serdaveric, 532 F.3d at 1359–60. Plaintiff asserts in a conclusory manner that his three-year delay in filing the instant lawsuit after learning about the '638 Patent is reasonable. Opp'n at 20. This argument is inapposite because the Court finds that the laches period began running, at the latest, in 2001. Plaintiff has otherwise failed to provide any evidence of extenuating circumstances that justify his 15-year delay in filing this action. See Aukerman, 960 F.2d at 1033 (listing examples of excuses for delay, including other litigation, negotiations with the accused, poverty and illness, and wartime conditions).

Rather than providing a legitimate excuse, plaintiff testified in his deposition that "nothing was preventing" him from "checking to see what patents or patent applications j2 had" and that he "[h]ad no interest." James Depo. at 316:17–24. And when asked during his deposition whether it is "fair to say that for the entire time that you worked for JFAX, that it never occurred to you that you would own any patents on the work that you were doing," plaintiff responded, "Yes, that's fair." James Depo. 67:12–16. Indeed, plaintiff did not pursue his inventorship claim until his lawyers notified him about the existence of the '638 Patent and "made the case" to him that he should file the instant action. DSUF No. 78. Thus, the evidence in the record suggests that plaintiff did not learn about his inventorship claim earlier because he had "no interest" in doing so. Plaintiff's lack of interest in determining whether he was named as an inventor on JFAX's patent does not constitute a valid excuse for the delay. See Wetzel v. Minnesota Ry. Transfer Co., 169 U.S. 237, 241 (1898) ("The interests of public order and tranquility demand that parties shall acquaint themselves with their rights within a reasonable time, and, although this time may be extended by their actual ignorance, or want of means, it is by no means illimitable."). And to the extent plaintiff's lack of interest stemmed from his belief that he would not own any patents on the work that he performed under the SDA, the Court observes that "ignorance of one's legal rights is not a reasonable excuse in a laches case." Pro-Football, Inc. v. Harjo, 567 F. Supp. 2d 46, 55 (D.D.C. 2008). The Court thus finds that plaintiff has not rebutted the presumption of an unreasonable delay.

### iii.     Prejudice

A plaintiff may also rebut a presumption of laches by offering evidence "sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue." Aukerman, 960 F.2d at 1038. "Economic prejudice may arise where a defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." Id. at 1033. "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." Saul Zaentz Co. v. Wozniak Travel, Inc., 627 F. Supp. 2d 1096, 1117 (N.D. Cal. 2008).

Plaintiff argues that defendants failed to raise the issue of economic and evidentiary prejudice in its motion for summary judgment and have thus waived this argument. Opp'n at 20–21. Plaintiff also argues that no prejudice arose in the intervening years between 2013, when he first learned of the '638 Patent, and 2016 when he filed this action. Id. With respect to plaintiff's first argument, plaintiff is incorrect when he asserts that defendants bear the burden of demonstrating economic and evidentiary prejudice. Rather, "[i]f the presumption [of laches] applies, unreasonable delay and prejudice are automatically inferred" and the burden shifts to the plaintiff to rebut this presumption. Expert Microsystems, Inc. v. University of Chicago, 712 F. Supp. 2d 1116, 1120 (E.D. Cal. 2010) (quoting Serdaveric, 532 F.3d at 1359). And with respect to his second argument, plaintiff erroneously assumes that the laches period began running in 2013 rather than in 2001 and provides no evidence rebutting presumption of economic and evidentiary prejudice caused by plaintiff's 15-year delay in filing this action. Plaintiff has thus failed to meet his burden of producing evidence to create a disputed material issue of fact as to either economic or evidentiary prejudice.

Although defendants do not bear the burden of demonstrating economic or evidentiary prejudice, they have adduced evidence of both types of prejudice. With respect to economic prejudice, j2 Cloud has made investments in licensing and asserting the '638 Patent since 2001 such that it would suffer economic prejudice if it were to lose ownership of the '638 Patent. Opp'n at 24; DSUF Nos. 74, 75. And with respect to evidentiary prejudice, one of the named inventors, Rieley, has passed away, DSUF No. 69, and it is likely that many relevant records have gone missing and memories have faded in the 23 years since plaintiff developed the systems at issue here.

In light of defendants' evidence of economic and evidentiary prejudice, and plaintiff's failure to adduce any evidence to rebut the presumption of prejudice, the Court will apply the doctrine of laches to plaintiff's claims.

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 | |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | | |

### iv.    Unclean Hands

"Even if unable to overcome the presumption [of laches], a [plaintiff] may be able to preclude application of the laches defense with proof that the [defendant] was guilty of misdeeds towards the [plaintiff]." Aukerman, 960 F.2d at 1038. In an inventorship action, "a plaintiff relying on the unclean hands doctrine must show not only that the defendant engaged in misconduct, but moreover that the defendant's misconduct was responsible for the plaintiff's delay in bringing suit." Serdaveric, 532 F.3d at 1361. Here, plaintiff asserts that defendants "acted in bad faith by deliberately omitting Mr. James as the sole inventor on the '638 Patent, despite touting his abilities and accomplishments in out-of-court admissions." Opp'n at 21. This defense fails "because it simply rehashes the basis of its inventorship claims and does not indicate why any of defendants' alleged misconduct is responsible for plaintiff's delay in filing suit." Expert Microsystems, 712 F. Supp. 2d at 1124; see also Serdaveric, 532 F.3d at 1361 ("If the failure to name an inventor were sufficiently 'egregious conduct' to give rise to an unclean hands claim, then laches would never be available as a defense to an inventorship claim."). The Court thus finds that defendants' laches defense is not precluded by unclean hands.[5]

Accordingly, the Court finds that the doctrine of laches applies and **GRANTS** defendants' motion for summary judgment on plaintiff's inventorship claim. The Court declines to reach the other grounds upon which defendants seek summary judgment on plaintiff's inventorship claim.

### C.    Whether Plaintiff's State Law Claims are Barred by the Applicable Statute of Limitations

Plaintiff's claims for fraudulent concealment and conversion are subject to a three-year statute of limitations. See Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1054 (9th Cir. 2008); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 915 (1996). And the statute of limitations for an unjust enrichment claim is two years, unless it is based on fraud or mistake, in which case the statute of limitations is three years. See

---

[5]    At oral argument, counsel for plaintiff argued that defendants also acted in bad faith because they misused plaintiff's private materials in applying for the '638 Patent and never returned the prototype that plaintiff developed. The Court is not persuaded by these additional arguments because these alleged "bad acts" do not appear to have any causal relationship with plaintiff's delay in filing suit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

Precision Orthopedic Implants Inc. v. Limacorporate S.P.A., No. 16-cv-02945-ODW, 2016 WL 7378878, at *6 n.6 (C.D. Cal. Dec. 20, 2016); F.D.I.C. v. Dintino, 167 Cal. App. 4th 333, 348 (Cal. Ct. App. 2008).

Plaintiff's state law claims are based on defendant's work developing the Voicemail-to-Email and Fax-to-Email systems in 1996 and defendants' application in 1997 for a patent covering these systems that did not name plaintiff as an inventor. See FAC ¶ 135 (alleging that JFAX fraudulently concealed from plaintiff the filing of a patent application that did not name him as an inventor); FAC ¶¶ 142, 144, 145 (alleging that plaintiff "conferred a benefit on JFAX by disclosing in confidence to JFAX [his] materials and technologies," that JFAX used those disclosures "in a manner not contemplated by the SDA . . . as evidenced by JFAX's filing and prosecuting utility patent applications [on the Voicemail-to-Email and Fax-to-Email systems]", and that JFAX was unjustly enriched when it "accepted and retained the benefit of [plaintiff's] property for [its] own advantage"); FAC ¶ 150 (alleging that JFAX converted plaintiff's property when it used his materials and technologies by "filing and prosecuting [the] patent application on the technologies which matured into the ['638 Patent]"). Although these claims are based on events that occurred between 1996 and 1997, plaintiff argues that his state law claims are not time-barred because he did not discover his claims until 2013, when he first learned of the '638 Patent. Opp'n at 22.

Under the discovery rule, a plaintiff seeking to avoid the statute of limitations must plead with particularity facts showing the plaintiff's "inability to have made earlier discovery despite reasonable diligence." Camsi IV v. Hunter Tech. Corp., 230 Cal. App. 3d 1525, 1536–37 (1991). Plaintiff bears the burden of showing diligence; accordingly, "the plaintiff must plead (and later prove) 'the facts showing: (a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); (c) how and when he actually discover[ed] the fraud or mistake.'" McKelvey v. Boeing North America, 74 Cal. App. 4th 151, 160 n.11 (quoting 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 602, p. 773). "Under this rule, constructive and presumed knowledge are equivalent to knowledge." Id. Although plaintiffs must act diligently to invoke the discovery rule or the doctrine of fraudulent concealment, diligence does not mean investigating any and all potential wrongdoing. A "plaintiff is not barred because the means of discovery were available at an earlier date provided he has shown that he was not put on inquiry by [the] circumstances." Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 439 (1945).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL       'O'       JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. |

Although the application of the discovery rule is typically a question of fact for the jury, summary judgment is proper "where the uncontradicted facts established through discovery are susceptible of only one legitimate inference[.]" Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 112 (1988). The Court finds that there is no reasonable interpretation of the undisputed facts that would allow plaintiff to meet his burden of showing diligence. The undisputed evidence demonstrates that: (1) plaintiff received documents in 1999 stating that JFAX was pursuing patents on major aspects of its technology, DSUF Nos. 41, 42; (2) plaintiff himself understood that JFAX would have applied for patents prior to making an IPO, id. No. 57; (3) the '638 Patent issued on March 27, 2001 and j2 Cloud issued a press release about the '638 Patent on May 17, 2001, id. Nos. 30, 33; and (4) plaintiff had "no interest" in determining whether JFAX had applied for any patents on his technology, nor was anything "preventing" him from doing so, id. No. 72. These facts establish both that plaintiff possessed information that put him on notice of his claims as early as 2001 and that he was not diligent.

In addition to being on inquiry notice of his claims, plaintiff also had constructive notice of the issuance of the '638 Patent. "[I]ssuance of a patent and recordation in the Patent Office constitute notice to the world of its existence." Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co., 297 U.S. 387, 393 (1936). At the pleading stage, the Court cited General Bedding Corp. v. Echevarria, 947 F.2d 1395 (9th Cir. 1991), for the proposition that the issuance of a patent does not necessarily constitute constructive notice of a plaintiff's claims and determined that this issue was better resolved on a more developed factual record. Dkt. 102 at 9. In General Bedding, the Ninth Circuit found that a genuine dispute existed as to whether the content of the patent constituted constructive notice to the plaintiff of his claims because the individual who allegedly misappropriated plaintiff's trade secret was not listed on the face of the patent. 947 F.2d at 1398. According to the Ninth Circuit, a reasonable person might not have inferred from the patent's existence that a fraud occurred but rather that the patent was a result of an independent discovery by the named inventors. Id. Now that the Court has been presented with a more developed factual record, the Court finds that plaintiff has provided no evidence that would create a genuine dispute as to whether the '638 Patent constituted constructive notice of plaintiff's claims against defendants. General Bedding is inapt here because the '638 Patent included enough information for plaintiff to learn that the patent covered the systems that he developed and that Rieley and Muller named themselves as the inventors rather than plaintiff. Because plaintiff had constructive notice of the '638 Patent and the content of that patent would have provided plaintiff with

CIVIL MINUTES – GENERAL          'O'      JS-6

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

the facts necessary for his state law claims, there is no genuine issue of material fact regarding the timeliness of plaintiff's state law claims.[6]

Plaintiff's entire opposition rests on two assertions: first, that he believed JFAX was not going to seek patent protection on his technology because of the confidentiality provision in the SDA; and second, that he sold his JFAX shares in 1999 and "thus had no incentive to monitor JFAX's activities whatsoever." Opp'n at 22. Both of these assertions are insufficient to create a genuine issue for trial. As the Court explained above, plaintiff's belief that JFAX was required to treat the subject matter of the SDA as a trade secret "in perpetuity" is unreasonable and unsupported by the plain language of the SDA. The Court is also not persuaded by plaintiff's second argument because, as of 1999, plaintiff possessed information that should have caused him to inquire further about whether JFAX was pursuing a patent on the systems that he developed. The fact that he sold his shares has no bearing on whether plaintiff should have exercised diligence in protecting his intellectual property rights. Moreover, when applying the statute of limitations, plaintiff's subjective knowledge of the existence of the '638 Patent is irrelevant because the issuance of the '638 Patent gave plaintiff constructive notice of its contents. Accordingly, the Court finds that the statute of limitations on plaintiff's state law claims started to run in 2001 (at the latest) and that each of plaintiff's state law claims are barred by the applicable statute of limitations.

The Court thus **GRANTS** defendants' motion for summary judgment on plaintiff's claims for fraudulent concealment, unjust enrichment, and conversion. The Court declines to reach the other grounds upon which defendants seek summary judgment on plaintiff's state law claims.

---

[6]     The Court observes that although the concept of constructive notice of the issuance of a patent "is not an appropriate substitute for the determination of reasonableness of excuse for delay" when applying the doctrine of laches, see Advanced Cardiovascular, 988 F.2d at 1162, courts routinely find that the issuance of a patent constitutes constructive notice when applying the statute of limitations, see e.g., Klang v. Pflueger, No. SACV-13-1971-JVS-DFMx, 2014 WL 12587028, at *5 (C.D. Cal. Oct. 2, 2014).

**CIVIL MINUTES – GENERAL**    **'O'**    **JS-6**

| Case No. | 2:16-cv-05769-CAS(PJWx) | Date | May 29, 2019 |
|---|---|---|---|
| Title | GREGORY C. JAMES v. J2 CLOUD SERVICES INC. ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |